George E. Deatherage v. Commissioner.
Deatherage v. Commissioner
Docket No. 4348-62.
United States Tax Court
T.C. Memo 1964-233; 1964 Tax Ct. Memo LEXIS 106; 23 T.C.M. (CCH) 1410; T.C.M. (RIA) 64233; September 8, 1964
*106 Held, petitioner, together with his wife, Marie A. Deatherage, as sole members of the partnership known as George E. Deatherage & Son, realized a taxable gain on the sale and reacquisition of the partnership's business in the taxable year 1959 in the amount of $12,450, which gain was not reported either on the partnership's final return for the fiscal year ending June 30, 1959, or on petitioner's and his wife's joint return for the calendar year 1959. George E. Deatherage, pro se, Satsuma, Fla. Eugene B. Smith, for the respondent. ARUNDELL
Memorandum Findings of Fact and Opinion ARUNDELL, Judge: The respondent determined deficiencies in income tax for the calendar years 1958 and 1959 against petitioner and his *108 wife, Marie A. Deatherage, in the amounts of $329.35 and $2,907.88, respectively. A petition was filed bearing the caption George E. Deatherage and Marie A. Deatherage but was signed only by George. On January 16, 1963, we granted the respondents motion to dismiss the proceeding for lack of jurisdiction insofar as it related to Marie and ordered the caption amended to read as above stated. The deficiency for 1958 is not in dispute. It has been assessed against Marie A. Deatherage as a result of our order dated January 16, 1963. The deficiency for 1959 is the result of several adjustments to income made by the respondent in the statutory notice. However, the only issue to be decided is whether the respondent erred in determining that petitioner and his wife, through their partnership, George E. Deatherage & Son, realized a taxable gain in 1959 in the amount of $12,450 from the sale and reacquisition of the partnership's business. Findings of Fact Some of the facts were stipulated and are so found. Petitioner and his wife, Marie A. Deatherage, resided during the taxable year 1958 in Lake Worth, Fla., and during 1959 in Satsuma, Fla., and together filed joint Federal income *109 tax returns for those years with the district director of internal revenue in Jacksonville, Fla.
During the years 1958 and 1959 petitioner and his wife were the only partners of a partnership known as George E. Deatherage & Son, hereinafter sometimes referred to as the partnership, which partnership was, during its operation and at all times relevant hereto, located in the State of Florida. The partnership was principally engaged in the operation of a "school" providing a course to its students by correspondence which was entitled and known as "Superintendents' and Project Managers' Training Course," sometimes hereinafter referred to as the correspondence course. The correspondence course consisted of 120 written lessons with accompanying written tests. Each lesson and test in the correspondence course was originated and prepared by petitioner and the material contained and used therein was and is protected by copyrights issued to and in the name of petitioner. The partnership filed its partnership returns on the basis of a fiscal year ended June 30. Petitioner and his wife filed their joint Federal income tax returns for 1958 and 1959 on a calendar year basis. On or about *110 November 29, 1958, petitioner and his wife, trading and doing business in the name of George E. Deatherage & Son, sold to National School of Heavy Equipment Operation, Inc., of Charlotte, N. Car., hereinafter sometimes referred to as National or the buyer, certain assets of the partnership which were described in the bill of sale and agreement signed in December 1958, as follows: All that certain written literary work known as "Superintendents' and Project Managers' Training Course," including the following copyrights now registered in the United States Patent Office: Nos. A 145845, A 145846, A 76604, A 76605, A 76606, A 112295, A 112296, A 133127 and A 76816, together with the right and privilege to renew same when they expire. Said copyrights are attached hereto and made a part hereof as fully as if contained herein. All the lesson stock now in the possession of the Seller, consisting of no less than 20,000 lessons. One Remington Noiseless Electric Typewriter, Serial No. E 21208561. 220 Sets of Negatives, all original art work, aluminum masters and paper masters for said course. The right and privilege to use the name of George Edward Deatherage and/or George E. Deatherage *111 & Son in connection with the use of said course and the advertising thereof. The right to translate said course or literary work into any foreign language or dialect, together with all publishing rights. It is understood, however, that the United States Army Corps of Engineers has the right to use certain portions of said course in its training course and that certain schools of engineering in various universities have copies of same for use only in connection with their scholastic work. The exclusive right of first refusal or option to purchase any literary work or course connected with the construction business produced in the future by George E. Deatherage, said right of refusal or option to be exercised within a period of 90 days after the same is offered for sale by the Seller. All other property connected with said literary work or course not herein specifically described or not specifically excepted, but necessary for the proper and efficient use thereof. Further provisions of the sale agreement provided that petitioner, through the partnership as seller, reserved the right to complete the service to the existing student or subscribers of the course; that petitioner *112 would revise and amend the course lessons when required and copyright such revisions; and that petitioner would not start another school or correspondence course relating to the subject matter for a period of 5 years from the date of the sale. The consideration to be paid to petitioner and his wife through the partnership by the buyer was also set out in the bill of sale and agreement as follows: That Seller, for and in consideration of the sum of ONE THOUSAND ($1000.00) DOLLARS, in hand paid by Buyer, the receipt whereof is hereby acknowledged, and a note executed by Buyer in the amount of THIRTY-FOUR THOUSAND ($34,000.00) DOLLARS, secured by a chattel mortgage and providing for payments as follows: $4,000.00 being due and payable on or before December 31, 1958, and the sum of $350.00 being due and payable on or before the 10th day of each and every month thereafter until the balance is fully paid * * * For the purpose of securing its obligation arising from the purchase of the partnership property under the terms of the aforementioned bill of sale and agreement, National, during November 1958, executed a chattel mortgage note and accompanying chattel mortgage in the principal *113 amount of $34,000 in favor of petitioner. Such chattel mortgage placed a lien upon all of the partnership property transferred to National, as hereinbefore set out, and was to be in effect so long as there remained an unpaid balance due from National to petitioner and his wife under the terms of the bill of sale and agreement. The entire cost of all of the physical assets of the partnership sold, as described in the bill of sale and agreement, had previously been treated on the partnership returns as cash expenditures, and business expense deductions taken therefor on those returns for the partnerships fiscal year in which they were purchased. This left the assets with no basis for tax purposes. Subsequent to the execution of the bill of sale and agreement by petitioner and his wife for the partnership, as seller, and National, as buyer, National failed to make some of the $350 monthly payments as provided by the sales agreement. As of October 1, 1959, National had only been able to pay approximately $7,450 under the original sales agreement, which sum included National's payment to the petitioner's partnership of the original downpayment of $1,000, and the additional downpayment *114 of $4,000 specified in that agreement as payable on or before December 31, 1958. Subsequent to October 1, 1959, National, being in default under the terms of the original sales agreement, determined to seek a withdrawal from this purchase obligation, including the chatel mortgage with accompanying chattel mortgage note given by it as security for the payment of the obligation. After various negotiations between the petitioner and National, the parties signed another document entitled "Agreement' in October 1959. The document entitled "Agreement" was entered into by National and the petitioner and his wife for the purpose of reconveying the property of the partnership originally sold to petitioner and his wife for a consideration which included the cancellation of Nationals obligation under the chattel mortgage and chattle mortgage note. The agreement reads in part as follows: WHEREAS, the parties hereto entered into several contracts whereby the Corporation [National] purchased certain personal property described in a Bill of Sale dated December , 1958, from the Partnership, for the sum of $35,000.00, and WHEREAS, the Corporation executed its note and chattel mortgage for *115 $34,000.00 and delivered same to Partnership, and WHEREAS, the Corporation has paid to the Partnership the sum of $12,150.00 on said note, together with the down payment of $1,000.00, the parties hereby agree as follows: 1. That, for and in consideration of the ipayment [payment] heretofore made by the Corporation and in consideration of the payment made upon execution of this agreement, the Partnership hereby agrees to accept the reconveyance of all of the property described in that certain Bill of Sale previously made between the parties, including * * * And the Partnership further agrees to mark "Paid in Full" the note and chattel mortgage given by the Corporation dated… and recorded in Book 563R, page 89, Mecklenburg County Public Registry. FOR AND IN CONSIDERATION of the Partnership's Agreement to accept the reconveyance of said personal property and the payments previously made, as full satisfaction of the said note and chattel mortgage, the Corporation hereby conveys to GEO. E. DEATHERAGE & SON the property hereinbefore described. While the reconveyance document entitled "Agreement" reflects that the petitioner received a total of only $12,150 as a result of the *116 hereinbefore described transactions with National relative to the correspondence course property, the correct total amount which was actually received as a result thereof was $12,450. Petitioner and his wife, as of the date of the reconveyance of the original partnership's correspondence course property from National to them, had received $12,450 in cash, plus the return of "all of the property" relative to the correspondence course which was originally conveyed to National under the bill of sale and agreement, all as a result of the foregoing transactions with National. The amount of $12,450 included, in addition to the $7,450 paid under the terms of the bill of sale and agreement, the amount of $5,000 paid by National as additional consideration for the petitioner's acceptance of the reconveyance of the property and his accompanying cancellation of the mortgage note and chattel mortgage. The U.S. partnership return of income, Form 1065, of the partnership, George E. Deatherage & Son, for the fiscal year ending June 30, 1959, filed by petitioner and his wife as sole partners therein, was designated thereon as, and in fact was, the final return filed by or on behalf of this partnership. *117 The original sale to National of the correspondence course property held in the name of the partnership, George E. Deatherage & Son, was made during the partnership's fiscal year ended June 30, 1959. The subsequent reconveyance thereof by National to the petitioner and his wife occurred subsequent to the end of the partnership's final fiscal year of operation but prior to the end of the calendar year 1959. Subsequent to the reconveyance of the correspondence course property by National petitioner and his wife formed a new partnership known as National Schools of Construction for the purpose of operating the correspondence course thereafter. Petitioner and his wife did not report, either on their joint Federal income tax return for 1959 or on the partnership's final return for its fiscal year ended June 30, 1959, any taxable benefit or gain derived from the transactions relative to the sale of the partnership property as hereinbefore set out. Further, any mention whatsoever of the sale and subsequent reconveyance of the partnership property was entirely omitted from any and all of the relevant income tax returns filed by petitioner and his wife for themselves, or for the partnership. *118 In his statutory notice of deficiency, the respondent determined, among other things, that the petitioner's partnership, George E. Deatherage & Son, realized a taxable gain in the amount of $12,450 from the sale and reacquisition of its correspondence course property to National, $11,250 of which constituted ordinary income and the balance, or $1,245, of which represented capital gain. The respondent further determined, in accordance therewith, that petitioner and his wife received, in effect, an additional distributive share of the partnership income of $11,827.50 ($11,205 plus 50 percent of $1,245) which was not taken into account or reported by them on their 1959 joint Federal income tax return or on the partnership's return for its final fiscal year ended June 30, 1959. Ultimate Findings of Fact The partnership was not entitled to any tax basis whatsoever in the correspondence course property at the date of its sale to National, expense deductions having been previously taken for the cost of all of the physical assets included in the partnership property transferred. Petitioner together with his wife, as sole members of the partnership known as George E. Deatherage & Son, *119 realized a taxable gain on the sale and reacquisition of the partnership business in the taxable year 1959 in the amount of $12,450, $11,205 of which constitutes ordinary income and $1,245 of which represents capital gain, which gain was not reported on their joint Federal income tax return for that year. Opinion Petitioner has not shown the respondent's determination to be in error in any respect. During the partnership's last fiscal year ending June 30, 1959, which was a year "ending within or with the taxable year of the partner" (sec. 706(a), I.R.C. 1954) petitioner and his wife, through the partnership, sold certain business assets for $35,000, payable $1,000 down, $4,000 on or before December 31, 1958, and the balance at the rate of $350 a month. On or about October 1, 1959, after the buyer had paid $7,450 of the purchase price, it entered into an agreement with petitioner whereby, in consideration of the payment by the buyer of an additional consideration of $5,000, petitioner agreed to accept a reconveyance of all of the property sold accompanied by a cancellation by petitioner of the original note and chattel mortgage in the principal amount of *120 $34,000. So at the end of petitioner's taxable year 1959 he and his wife had not only received $12,450 in cash but had reacquired substantially all of the property they had previously sold through the partnership. If the original sale had been fully carried out as agreed upon, petitioner and his wife would have realized a gain of the entire selling price of $35,000 under section 1001 of the 1954 Code as the property sold had no tax "basis" under sections 1011 and 1012 of the Code. The entire cost of the assets sold had previously been deducted as business expenses. The record does not show the years in which such costs were taken as expenses or the amounts thereof and neither party has raised any question as to whether such action was proper or improper. Before the end of the taxable year 1959 petitioner and his wife had received $12,450 in cash, taken back the property previously sold, and cancelled the note and chattel mortgage. They were free to do whatever they pleased with the $12,450 of cash. It is true that the reacquired property was not in the same condition it was in at the time it was sold and the evidence shows that after the property was reconveyed petitioner and his *121 wife formed a new partnership, National Schools of Construction, and through this new partnership expended monies in reconditioning the reacquired property, which amounts were claimed as expense deductions by the new partnership, mostly in later years not before us. Based on the foregoing, we hold that under sections 61(a)(3) and 1001 of the 1954 Code petitioner and his wife realized during 1959 a taxable gain in the amount of $12,450 from the sale and reacquisition of their partnership property. The respondent further determined that the gain of $12,450 should be allocated between ordinary income and capital gain on the basis of 90 percent and 10 percent, respectively. Petitioner has not shown this allocation to be erroneous. Furthermore, section 1221 of the 1954 Code, in defining the term "capital asset," provides that the term does not include - (1) stock in trade of the taxpayer or other property of a kind which would properly be included in the inventory of the taxpayer if on hand at the close of the taxable year, or property held by the taxpayer primarily for sale to customers in the ordinary course of his trade or business; * * *
(3) a copyright, a literary * * *122 * composition, or similar property, held by - (A) a taxpayer whose personal efforts created such property * * *. In his brief, the respondent argues, in part, as follows: From reference to the assets of the partnership sold * * * it is readily observable that the only thing which might have been sold which was a capital asset and not excluded by section 1221 would be something in the nature of "good will," and the respondent, recognizing this fact, allocated $1,245.00 of the amount received to cover this possibility. As previously stated, there is no evidence to show that this allocation by respondent was in any way erroneous. In this connection, it may be noted that apparently the greater part of the value of the assets sold was the lessons that had been created by the personal efforts of petitioner and which had been copyrighted, and it may also be noted that the record does not show the "holding period" (sec. 1223, I.R.C. 1954) of the assets sold at the time of the sale. Petitioner has made other arguments in his brief concerning the depreviation of the equal protection of the laws guaranteed by the Fourteenth Amendment to the Constitution of the *123 United States and has cited and in some uncertain way relies on the public school desegregation decision of the Supreme Court in the case of Brown v. Board of Education, 347 U.S. 483 (1954). Suffice it to say we have considered all of petitioner's arguments and find them to be without merit in the issue before us. Decision will be entered for the respondent.